# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Scott Roman Parizek, | ) |
| Plaintiff, | ) **ORDER DENYING MOTION TO AMEND, DISMISSING COMPLAINT IN PART, AND GRANTING LEAVE TO AMEND ADA CLAIM** |
| vs. | ) |
| Rozanna C. Larson, et al., | ) Case No. 1:22-cv-052 |
| Defendants. | ) |

Plaintiff Scott Roman Parizek ("Parizek") is currently incarcerated at the Ward County Jail in Minot, North Dakota. He is proceeding pro se and in forma pauperis. (Doc. Nos. 1, 4, 6). He is endeavoring to sue Ward County State's Attorney Rozanna Larson, Assistant Ward County State's Attorney Leah Viste, McHenry County State's Attorney Joshua Frey, Ward County Sheriff Bob Roed, McHenry County Sheriff Trey Skager, and Judges Michael Hurley and Douglas Mattson[1] in their official and individual capacities. (Doc. No. 6). He is also endeavoring to sue the State of North Dakota. (Id.). Finally, he has filed motion seeking leave to amend his pleadings to include a challenge to his present confinement. (Doc. No. 9).

The court has screened Parizek's complaint as mandated by 28 U.S.C. §1915A and reviewed his motion. For the reasons that follow, the court shall deny his motion to amend, dismiss his complaint in part, and grant him leave to file an amended complaint to address the pleading deficiencies with respect to his remaining claim.

---

[1] Parizek neither names Judge Mattson as a defendant in the caption of his complaint nor lists Judge Mattson with the other defendants in the body of the complaint under the heading "Parties." He does, however, appear to assert claims against Judge Mattson in the body of the complaint under the heading "Statement of Claim."

1

I.      **STANDARD GOVERNING INITIAL REVIEW**

When a prisoner proceeding in forma pauperis seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope this will lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit.  Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

The PLRA does not impose any heightened pleading requirements. Jones, 549 U.S. at 211-12.  Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys.  Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however.  In enacting the screening requirement, Congress  obviously expected it to be more than an a ritualistic exercise and that courts would only allow to go forward  those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic").  The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555).  And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional.  See  Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997).  Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a cognizable claim. Walker, 104 F.3d at 157-58.

Also, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no

3

claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-54 (7th Cir. 2002) (citing other cases). Also, liberal construction does not mean the court is under an obligation to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## II. DISCUSSION

### A. Complaint

#### 1. State of North Dakota

Parizek has named the State of North Dakota as a defendant and seeks to recover damages from it. As a preliminary matter, the court finds that Parizek's complaint as it pertains to the State of North Dakota is subject to dismissal.

The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Congress may abrogate the States' sovereign immunity by expressing its unequivocal intention to do so and acting pursuant to a valid grant of constitutional authority, or a State may waive its sovereign immunity by consenting to suit in federal court. See Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). However, Congress did not abrogate the States' sovereign immunity in enacting § 1983, Quern v. Jordan, 440 U.S. 332, 340-45 (1979), and North Dakota has not waived its immunity. Moore v. Hoeven, No. 3:08-CV-50, 2009 WL 3064742 , at * 3 (D.N.D. Sept. 22, 2009) (citing N.D.C.C. § 32-12.2-10). Consequently, Parizek cannot maintain a claim for damages against the State. The court shall next address the viability of Parizek's claims against Sheriffs Roed and Skager.

### 2. Sheriffs Bob Roed and Trey Skager

According to Parizek, he was moved from the Ward County Jail to the Heart of America Correctional and Treatment Center ("HACTC") January. (Doc. No. 6). Although not entirely clear, it appears that Parizek was moved to facilitate his scheduled appearance before Judge Hurley. (Id.). The apparent effect of this move was an interruption in a methadone treatment program in which Parizek was participating. (Id.). According to Parizek, he was able to participate in a community based methadone treatment program while at the Ward County Jail. (Id.). However, he apparently was unable to participate in any such program while at HACTC and HACTC was either unable or unwilling to procure methadone for him. (Id.). Consequently, by his calculation, he went without methadone for seven days. (Id.).

Liberally construing the pleadings, it appears that Parizek is asserting that, by moving him from the Ward County Jail to HACTC, he was effectively denied methadone and forced to undergo "cold turkey" withdrawal, which constitutes discrimination on the basis disability in violation of the Americans with Disabilities Act ("ADA").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). To prove a violation of Title II, a plaintiff must show that he: (1) "is a qualified individual with a disability;" (2) "was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against;" and (3) "that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA. 28 C.F.R. § 35.104(1)(ii) ("The phrase physical or mental impairment includes ... drug addiction...."). However, the term "qualified individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs. 28 C.F.R. § 35.104(5)(iii). A person is "not considered 'qualified' under the [ADA] if [he has] used illegal drugs 'recently enough so that continuing use is a real ongoing problem.'" New Directions Treatment Servs. v. City of Reading, 490, F.3d 293, 309 (3d Cir.2007) (quoting Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001).

Here, it is unclear whether Parizek would constitute a qualified individual under the ADA as it unclear whether he has a real ongoing problem with substance abuse, how long he had been in custody, and how long he had been undergoing methadone treatment prior to being moved from the Ward County Jail to HACTC. See e.g., McKissick v. Cty. of York, No. 1:09-CV-1840, 2011 WL 5117621, at *9 (M.D. Pa. Oct. 25, 2011) (stating that an individual who had admitted to use of controlled substances days prior to being arrested raised serious questions as to whether he qualified under the ADA). Rather than dismiss this claim outright, the court shall, out of an abundance of caution, afford Parizek an opportunity to amend this claim and in so doing assert the factual basis for it in greater detail. The court shall next review Parizek's claims against State's Attorneys Larson and Frey and Assistant State's Attorney Viste.

  **3.**  **Assistant State Attorney Leah Viste and States Attorneys Rozanna Larson Joshua Frey**

Parizek takes issue with how Larson, Frey, and Viste comported themselves during the course of their criminal prosecutions of him. Specifically, he asserts:

- Larson discriminated against him.

- • Larson, Frey and Viste "while working under the color of law did not make real effort in all of my cases to make it fair." (Doc. No. 6).
- • Larson and Viste violated court rules in State Case No. 51-2021-CR-00742.
- • Larson and Viste discriminated against him State Case Nos. 51-2021-CR-0025 and 51-2021-CR-00027.
- • Larson and Vieste have filed "several frivolous and malicious criminal cases against plaintiff." (Id.). "Leah Viste & Rozanna C. Larson had broken 3 plea deals off the record and even charging me with the most outragest things 51-2021-CF-00025 51-2021Cr-0027." (Id.) (errors in original).
- • Larson "failed while working under color of law to treat the plaintiff equally." (Id.).
- • Larson harbors a grudge against him, has ulterior motives for prosecuting him, has maliciously prosecuted him, has abused her authority, and has violated the Fourth Amendment in her pursuit of him.

"It is well established in this circuit that '[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.'" Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 977 (8th Cir. 1993)); see also McNeil v. City of Omaha, No. 8:07CV143, 2008 WL 312715, at *2 (D. Neb. Jan. 30, 2008) ("[M]alicious prosecution is a tort under state law and is not actionable under 42 U.S.C. § 1983). "[M]alicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law." Sanders, 984 F.2d at 97. And the assertion that defendants violated a state court order does not form the basis for a claim of constitutional dimension. See Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995)

("violations of state laws, state-agency regulations, and more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone.").

Here, Parizek's assertion that Larson violated the Fourth Amendment are conclusory. His pleadings are otherwise devoid of any allegations that Frey's or Viste's conduct infringed upon any federally protected right. Consequently, he has failed to assert cognizable constitutional claims against Larson, Frey, or Viste.

Pleadings deficiencies aside, it is appears that Larson, Frey and Viste are immune from suit. Actions taken as an advocate enjoy absolute immunity, see Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (concluded that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" had absolute immunity from under § 1983), while actions taken as an investigator enjoy only qualified immunity, see Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (prosecutors "perform[ing] the investigative functions normally performed by a detective or police officer" have qualified immunity).

Parizek's claims against Larson, Frey, and Viste all pertain to or arise out of their prosecution of him. Consequently, these claims appear to be foreclosed by absolute prosecutorial immunity. See Kalina v. Fletcher 522 U.S. 118, 127 (1997) ("[I]n determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it." (internal quotes omitted)); Buckley, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); see also Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is . . . entitled to absolute immunity despite allegations

of his knowing use of perjured testimony and the deliberate withholding of exculpatory information. Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages." (internal quotes omitted)).

### 4. Judge Michael Hurley

Parizek asserts the following with respect to Judge Hurley. First, he asserts that Judge Hurley accepted his "false plea of guilt" in one or more of his state criminal cases. (Doc. No. 6). Second, although not entirely clear, he appears to assert Judge Hurley discriminated against him and denied him methadone treatment to the extent that he may have had a hand in having him transported from the Ward County Jail to HACTC. Third, he appears to assert that the sentence imposed by Judge Hurley in one of his criminal cases was excessive.

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994); see also Callahan v. Rendlen, 806 F.2d 795, 796 (8th Cir. 1986) ("[J]udicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983."). As the Eighth Circuit has explained, "[t]his absolute immunity from suit allows judges to fulfill their duties without concern for their own fortunes, which helps to ensure that their duties will be performed impartially and completely." See Howell v. Hofbauer, 123 F. Supp. 2d 1178, 1180 (N.D. Iowa 2000) (quoting Duffy v. Wolle, 123 F.3d 1026, 1034 (8th Cir. 1997)).

Judicial immunity is an immunity from suit, not just the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 10 (1981). It cannot be overcome by allegations of bad faith or malice. Id.; see also Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly"); Harlow v. Fitzgerald, 457 U.S. 800, 815-19,

(1982) (opining that allegations of malice are insufficient to overcome absolute immunity).

There are only two circumstances under which judicial immunity may be overcome, neither of which are apparent in the case at bar. First, a judge is not immune from liability for nonjudicial actions, that is, actions not taken in the judge's official capacity. See Mirales v. Waco, 502 U.S. 9, 9-12 (adding that an action is judicial in nature if "it is a function normally performed by a judge and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. See id.; see also Stump v. Sparkman, 435 U.S. 349, 356-57 (1998) ("A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in 'clear absence of all jurisdiction.'").

Judge Hurley's actions as alleged by Parizek were clearly judicial in nature. See Malina v. Gonzalez, 994 F.2d 1121, 1124 (5th Cir. 1993) (considering four factors when assessing whether an action was "judicial in nature"). Parizek does not explicitly challenge the state court's jurisdiction in his the underlying criminal case. Consequently, Judge Hurley is cloaked in judicial immunity and Parizek's claims against him are subject to dismissal. The same can be said with respect to Judge Mattson.

### 5. Judge Douglas Mattson

Parizek asserts that Judge Mattson discriminated against him and denied him a preliminary hearing and by extension due process one of his criminal cases, "did not make real effort in all of [his] cases to make it fair," denied him bond in one of his cases, broke court rules, caused him emotional and mental suffering, and "illegally filed a failure to appear on [him]." (Doc. No. 6).

Judge Hurley's actions as alleged by Parizek were judicial in nature. Parizek does not

explicitly challenge the state court's jurisdiction in the underlying criminal cases he references. Consequently, Judge Mattson is immune from suit and the claims against him are subject to dismissal.

### B. Motion Seeking Leave to Amend

On April 4, 2022, Parizek filed what the court construes as a motion for leave to amend to the pleadings. Therein Parizek appears to take issue with his present confinement and the denial of good time to which he feels entitled. Specifically, he asserts;.

> I ask the court to award the Plaintiff Scott Parizek an amount of $500.00 a day since the 90th day of the sentence staring Dec/21/2021 @ 1450 delivered by K. Kossan officer of Minot PD 439872 ending March/6/2022 A 90 day sentence comes with 15 days of good time, Plaintiff entitled to due to good behavior during said period. The amount being today $10,500.00 as of April 1st. On March/2/2022 in Ward County Court room 8:30 AM Judge Tod Cresup made Plaintiff's bond 8,000 post 10d with $250.00 already posted. The Plaintiff had the $550 on his bail account at or about the date March/6/2022 just because Ward Count Jail made a discrimination tactic not allowing Plaintiff to rightfully post the Bond until March/18/2022. The Ward County issue should have no berrong on the Plaintiff Scott Parizek being wrongfully jailed or imprisoned held without bond post said bench warrant read.
> 29-26-05, 24-26-10 Plaintiff was committed to Officer K. Kossan Dec-21-2021 or index/exhibit (1) in case 1:22-cv-052 1 43980721 bage 4398072
> related cases
> 1:18-cv-115
> 1:1-cv-01110
> 1:22-cv-052
>
> The 8th addmendment and sentencing stipulation that would be putting plaintiff' physical health, and life endangered.
> Violating no government enity may denied or discriminate treatment American Disability Act under Mat also no inmate will be physically harmed.
> The Bench Warrant stated 90 days Dec-21-2021 @ 1450

(Doc. No. 9) (errors in original).

It is well settled that a prisoner cannot use § 1983 action to challenge the fact or duration of his present confinement. See Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). As a practical matter this is Parizek is endeavoring to do here. He is seeking to be financially compensated for the time he

11

asserts he has been wrongly incarcerated.  Consequently, he is indirectly challenging the validity of his confinement.  His Parizek's motion is therefore denied.

### III.   CONCLUSION

Affording Parizek the opportunity to amend his claims against the attorneys who prosecuted him and the judges who presided over these prosecutions would be an exercise in futility as the basis for his claims against them arise out of the performance of their prosecutorial and judicial duties. Affording him the opportunity to amend his claims as they may pertain to the State would also be exercise in futility.  Accordingly, Parizek's claims against States's Attorneys Larson and Frey, Assistant States Attorney Viste, Judge Hurley, Judge Mattson, and the State of North Dakota are **DISMISSED** with prejudice.  Parizek shall have until May 7, 2022, to amend his ADA claim against the Sheriffs Roed and Skager in their official and/or individual capacities. The court shall  review Parizek's amended claim once it is filed pursuant to § 1915A. Failure to amend this claim may result in its summary dismissal.  Parizek's motion to for leave to amend the pleadings to assert a challenge to his present confinement (Doc. No. 9) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 5th day of April, 2022.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court
